UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BARRY STIMPSON, on behalf of himself and other similarly situated, | Case No. 1:17-cv-00431-BLW |
| Plaintiff, | MEMORANDUM DECISION AND ORDER |
| v. | |
| MIDLAND CREDIT MANAGEMENT, INC., a Kansas corporation, and MIDLAND FUNDING, LLC, a Delaware limited liability company, | |
| Defendant. | |

**I**

**INTRODUCTION**

Before the Court is Defendants' Motion for Summary Judgment and Plaintiff's

Motion For Leave to File An Amended Complaint. *See* Dkts. 24, 35.

Plaintiff Barry Stimpson filed this putative class action suit on behalf of himself

and others similarly situated. He alleges that defendants violated the Fair Debt Collection

Practices Act by sending deceptive or misleading letters seeking repayment of time-

barred debts. After the Court heard oral argument on the motion for summary judgment,

plaintiff moved to amend his complaint. For the reasons explained below, the Court will

grant Defendants' motion for summary judgment and deny the motion to amend.

# II
# FACTS

In March 2017, Midland Credit Management, Inc. sent a dunning letter to plaintiff.

The first page of the letter (not including a clip-off payment coupon), is shown here:



The letter speaks for itself, but a few points are worth highlighting, given the parties' arguments. As shown, the letter informed Stimpson that "Midland Credit Management, Inc. (MCM)[1] is the debt collection company, which will be collecting on, and servicing your account." Midland offered Stimpson three "Available Payment Options": (1) He could immediately pay 60 percent of the balance; (2) he could pay 80 percent of the balance over six months; or (3) he could make "Monthly Payments As Low As $50 per month." Midland touted the benefits of paying the debt as: (1) saving up to $458.24; (2) putting the debt behind him; (3) "No more communication on the account"; and (4) "Peace of mind." Finally, the letter contains this disclaimer language, which is a central focus of this lawsuit: "The law limits how long you can be sued on a debt and how long a debt can appear on your credit report. Due to the age of this debt, we will not sue you for it or report payment or non-payment to a credit bureau." The letter also state that the offer expires in 30 days, and that Midland is "not obligated to renew any offers provided."

In 2006, more than ten years before Midland sent this letter, Stimpson entered into a credit card agreement with HSBC Bank Nevada, N.A. Stimpson made purchases with the card but did not pay off his entire balance. In 2009, HSBC sold the account to a debt collector, Defendant Midland Credit Funding, LLC. As of March 2017, the balance on Stimpson's account was $1,145.60, presumably including interest and other charges.

---

[1] Defendant Midland Funding, LLC purchased Stimpson's credit card account, and Defendant Midland Credit Management, Inc. serviced the account. For ease of reference, this opinion sometimes uses the term "Midland" to refer to either or both defendants.

Stimpson has not disputed the amount or the validity of this debt. When Midland sent Stimpson the dunning letter in March 2017, the statute of limitations had long since expired.

Stimpson did not choose any of the payment options offered in the letter. Instead, he sued Midland for sending the letter. Stimpson alleges that Midland engaged in unfair and deceptive acts and practices in violation of Sections 1692e and 1692f of the FDCPA. *See Compl.*, Dkt. 1-1, ¶ 42. He seeks actual and statutory damages for himself and for each member of a putative statewide class. *Id.* at 8. *See generally* 15 U.S.C. §1692k.

### III
### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The Court will first address defendants' motion for summary judgment and then turn to plaintiff's motion for leave to amend his complaint.

### A.  The Governing Legal Standard

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise

properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). There must be a genuine dispute as to any *material* fact – a fact "that may affect the outcome of the case." *Id.* at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id.* at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Deveraux*, 263 F.3d at 1076. The non-moving party must go beyond the pleadings and show "by her [ ] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex,* 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch.*

*Dist.,* 237 F.3d 1026, 1029 (9th Cir. 2001) (quotation omitted).  Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

Only admissible evidence may be considered in ruling on a motion for summary judgment.  *Orr v. Bank of America,* 285 F.3d 764, 773 (9th Cir. 2002); *see also* Fed. R. Civ. P. 56(e).  In determining admissibility for summary judgment purposes, it is the contents of the evidence rather than its form that must be considered.  *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003).  If the contents of the evidence could be presented in an admissible form at trial, those contents may be considered on summary judgment even if the evidence itself is hearsay.  *Id.* (affirming consideration of hearsay contents of plaintiff's diary on summary judgment because at trial, plaintiff's testimony of contents would not be hearsay).

In order to preserve a hearsay objection, "a party must either move to strike the affidavit or otherwise lodge an objection with the district court."  *Pfingston v. Ronan Engineering Co.,* 284 F.3d 999, 1003 (9th Cir. 2002).  In the absence of objection, the Court may consider hearsay evidence.  *Skillsky v. Lucky Stores, Inc.,* 893 F.2d 1088, 1094 (9th Cir. 1990).

Statements in a brief, unsupported by the record, cannot be used to create a factual dispute.  *Barnes v. Independent Auto. Dealers*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995). The Circuit has "repeatedly held that documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment."  *Beyene v. Coleman Sec. Services, Inc.,* 854 F.2d 1179, 1182 (9th Cir. 1988).  Authentication,

required by Federal Rule of Evidence 901(a), is not satisfied simply by attaching a document to an affidavit. *Id.* The affidavit must contain testimony of a witness with personal knowledge of the facts who attests to the identity and due execution of the document. *Id.*

## B. Analysis

Stimpson alleges a single claim under the Fair Debt Collection Practices Act (FDCPA). *See* 15 U.S.C. §§ 1692e, 1692f. Congress enacted the FDCPA in 1977 in response to the "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a). The FDCPA prohibits a debt collector from asserting any "false, deceptive, or misleading representation," or using any "unfair or unconscionable means" to collect, or attempt to collect, a debt. §§ 1692e, 1692f. Section 1692e provides a nonexclusive list of prohibited practices, such as falsely representing the character or legal status of a debt or threatening to take legal action that cannot be taken. § 1692e(2)(A), (5). Because the FDCPA is a remedial statute, its language is construed broadly in order to effect its purpose. *Clark v. Capital Credit & Collection Serv., Inc.*, 460 F.3d 1162, 1176 (9th Cir. 2006).

It is not necessary for the debt collector's representation to have actually misled or deceived the plaintiff; instead, the inquiry depends on the "least sophisticated debtor" standard. *Tourgeman v. Collins Fin. Servs., Inc*, 755 F.3d 1109, 1119 (9th Cir. 2014) (quoting *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010)). "The least sophisticated debtor standard is lower than simply examining whether particular language would deceive or mislead a reasonable debtor." *Id.* (quoting *Donohue*, 592 F.3d at 1030)

(internal quotations omitted). While most courts accept the least sophisticated debtor as "uninformed, naïve, and gullible," her interpretation of a collection notice still cannot be "bizarre or unreasonable." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1027 (9th Cir. 2012) (citing *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645 (7th Cir. 2009)).

In the Ninth Circuit, a debt collector's liability under § 1692e is an issue of law. *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1061 (9th Cir. 2011); *see also Tourgeman*, 755 F.3d at 1118 (the "inquiry is objective and is undertaken as a matter of law").

### 1. Midland Did Not Mislead Stimpson By Failing to Include a Revival Warning

To prevail on his claim, Stimpson must demonstrate that: (1) he is a consumer; (2) defendant is a debt collector; (3) the defendant's challenged practice involves an attempt to collect a debt; and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt. *See* 15 U.S.C. §§ 1692a – 1692o. Only the fourth element is disputed here.

Stimpson's key allegation is that the dunning letter violates the FDCPA because it does not explicitly inform him that if he chose one of the three offered payment options, he would reset the statute of limitations clock on his time-barred debt – putting him in a worse position than if he made no payment. *See Compl.*, Dkt. 1-1, ¶¶ 33-44. Under Idaho law, the statute of limitations can be revived if a debtor makes a partial payment on an existing, stale debt. *See* Idaho Code § 5-238 ("any payment of principal or interest is equivalent to a new promise in writing, duly signed, to pay the residue of the debt").

Stimpson's theory, then, is that Midland misled the least-sophisticated consumer when it solicited a partial payment on stale debt and touted the benefits of such a payment (peace of mind, putting the debt behind you, and so on), but failed to specifically inform the consumer of the risks of such a payment (revival). *See Compl.*, Dkt. 1-1, ¶ 38.

Stimpson's credit card agreement, however, is governed by Nevada law – not Idaho law. The credit card agreement states:

> This Agreement and your Account will be governed by federal law and, to the extent state law is applicable, the laws of the state of Nevada, whether or not you live in Nevada and whether or not your Account is used outside Nevada. This Agreement is entered into in Nevada, your Account is maintained in Nevada, and all credit under this Agreement will be extended from Nevada.

Dkt. 22, Ex. 4, at 3.

Under Nevada law, a partial payment on a time-barred debt does not revive the statute of limitations. *See* Nev. Rev. Stat. Ann. § 11.200 ("whenever any payment on principal or interest has been or shall be made upon an existing contract . . . the limitation [period] shall commence from the time the last payment was made"); *Riff v. Kowal*, 352 P.2d 819, 820 (Nev. 1960) ("the language 'existing contract,' as used in NRS 11.200, . . . must be construed to mean an existing enforcible contract and not a contract the enforcement of which has already been barred by the statute of limitations")

Because there was no risk of revival, the Court concludes, as a matter of law, that Midland's dunning letter did not violate the FDCPA by dint of failing to include a more specific warning that a partial payment might reset the limitations clock. *Accord Genova v. Total Card, Inc.*, 193 F. Supp. 3d 360 (D.N.J. 2016) ("The partial settlement payments

Defendant solicited in the Letter would *not* revive the statute of limitations . . . , so Defendant did not make false, deceptive, or misleading representations concerning the potential legal status of the MBC Debt."); *cf. Trichell v. Midland Credit Mgmt., Inc.*, No. 4:18-cv-00132-ACA, 2018 WL 4184570, at *4 (N.D. Ala. Aug. 31, 2018) (granting a motion to dismiss; concluding that the same disclaimer language sufficient where the plaintiff did not argue that a partial payment could restart the statute of limitations).

Stimpson says that despite the Nevada choice-of-law provision, Idaho law nevertheless governs the credit card agreement. The Court is not persuaded.

Idaho generally enforces choice-of-law provisions in contracts. *Great Plains Equip., Inc v. Nw. Pipeline Corp.*, 979 P.2d 627, 639 n.3 (Idaho 1999). According to the Restatement of Conflict of Laws, which Idaho follows, a choice-of-law provision will be honored unless the "application of the law of the chosen state would be contrary to a fundamental policy of the state which has a materially greater interest than the chosen state in the determination of the particular issue…." Restatement (Second) of Conflict of Laws § 187(2)(b). *See generally Carroll v. MBNA Am. Bank*, 220 P.3d 1080, 1084 (Idaho 2009) (Idaho determines the applicable law governing contracts using the Restatement approach).

Stimpson contends that applying Nevada's laws to his credit agreement with HSCB Bank is contrary to Idaho public policy as expressed in Idaho's Credit Code (the ICC). The ICC expresses Idaho's public policy, "[t]o protect debtors against unfair practices by some suppliers of credit, . . . ." Idaho Code § 28-41-102(2)(c). In the case of "regulated credit sales, regulated loans or modifications thereof," the ICC invalidates

choice-of-law agreements applying the law of another state when an (1) Idaho resident enters into a loan transaction while physically present in Idaho and (2) the creditor has either (a) solicited or advertised in Idaho or (b) received a written agreement evidencing the Idaho resident consumer's obligation or offer in the State of Idaho. *See* Idaho Code §§ 28-41-201(1), (2), & (8).

In opposing defendants' motion for summary judgment, Stimpson has not come forward with evidence that HSBC either received the credit card agreement in Idaho or solicited or advertised in Idaho. Likewise, Stimpson has not presented evidence that he entered into the credit card agreement while physically present in the State of Idaho or, for that matter, that he was an Idaho resident at the time he entered into the credit card agreement. He has thus failed to challenge the facts asserted by defendants in the manner required by Rule 56. More to the point, he has failed to come forward with evidence that would displace the choice-of-law provision contained in the credit card agreement he indisputably entered into. Accordingly, the Court concludes that Nevada law governs the parties' agreement. *See* Fed. R. Civ. P. 56(e).

Stimpson also argues that, regardless of which state's law applies, he will still be disadvantaged because a partial payment could force him to argue choice of law in court and the "least-sophisticated debtor" would not be aware of the choice-of-law provision. Dkt. 26 at 19. There is some merit to this claim: choice-of-law analysis is complex and if Midland were to sue Stimpson, and then claim in that lawsuit that Idaho law governed, thus reviving Stimpson's debt, Stimpson might need an attorney to figure out and argue that Nevada law applies. But ultimately, the Court is not persuaded that collectors must

warn of such a hypothetical, attenuated risk. Nevada law governs this account; Stimpson has not come forward with any evidence demonstrating that Nevada law does not apply; therefore; there is no risk of revival under Nevada law; and, therefore, Midland did not mislead or confuse Stimpson by failing to include a revival warning. The outcome might be different if Idaho law governed the account, but that issue is not before the Court and will thus be left for another day.[2]

### 2. Midland Did Not Mislead Stimpson by Telling Him He Could "Save" Money

Aside from the alleged failure to include a revival warning, Stimpson's complaint does not specifically identify other parts of the letter that render it false, deceptive, misleading, unconscionable, or unfair. *See Compl.*, Dkt. 1-1. But the complaint does allege, more generally, that defendants violated the FDCPA "by dunning consumers on time-barred debts without disclosure of that fact." *Id.* ¶ 42. And in defending Midland's motion for summary judgment, Stimpson advanced two additional theories as to why the letter violates the FDCPA.

First, Stimpson argues that Midland made false statements by offering up three specific payment options and informing Stimpson that he could "*save* $458.24" if he elected to pay a lump sum within 30 days. Stimpson focuses on the word "save," and

---

[2] During oral argument, the Court asked counsel to advise if they would prefer to receive a ruling on this question as well now (rather than later), given that this is a putative class action and plaintiff's counsel may well have other individuals in mind whose credit agreements are governed by Idaho law. The parties did not reach agreement on this point, however, so the Court will restrict itself to the issues squarely before it.

says this is necessarily a misrepresentation because he had no obligation to repay his debt, and, therefore, paying *any* amount over zero could not be a "savings."

But Stimpson's debt did not evaporate when the statute of limitations ran. He made purchases with his credit card and he didn't pay the bill when it came due. His credit card debt is thus a valid, outstanding obligation and it will remain so until he pays it, regardless of whether his creditor can successfully sue him. *See Midland Funding, LLC v. Johnson*, 137 S. Ct. 1407, 1411 (2017). Accordingly, Midland may continue to appeal to Stimpson to pay his debt, and, therefore, it stands to reason that Midland may send a letter offering to accept less than the full amount Stimpson owes – resulting in a savings for Stimpson. As the Sixth Circuit recently explained,

> Legal defenses are not moral defenses, however. And a creditor remains free, in the absence of a bankruptcy order or something comparable *preventing* it from trying to collect the debt, to let the debtor know what the debt is and to ask her to pay it. There thus is nothing wrong with informing debtors that a debt remains unpaid or for that matter allowing them to satisfy the debt at a discount. For some individuals, such letters may offer a welcome solution to an outstanding debt.

*Buchanan v. Northland Group, Inc.*, 776 F.3d 393, 396 (6th Cir. 2015); *see also Pantoja v. Portfolio Recovery Assocs., LLC*, 852 F.3d 679, 684 (7th Cir. 2017) ("The creditor retains the legal right to appeal to the debtor to honor the debt out of a sense of moral obligation even if the legal obligation can no longer be enforced in court.").

Accordingly, the Court is not persuaded that Midland's offer – or, more specifically, its use of the word "savings" in making the offer – would mislead or confuse the least sophisticated consumer.

### 3. Midland Did Not Imply That the Time-barred Debt was Judicially Enforceable

Finally, and relatedly, Stimpson argues that the dunning letter violates the FDCPA because it suggests Midland could enforce the debt in court, when, in reality, Midland would face an ironclad statute-of-limitations defense if it were to sue.

#### (a) The FDCPA Does Not Mandate Specific Statute-of-Limitations Warnings

Preliminarily, the parties seem to agree on this analytical starting point: If a debt collector sends a letter seeking to collect on a time-barred debt, that letter must explicitly inform the recipient that the statute of limitations has run. *See, e.g., Reply*, Dkt. 32, at 3. But the FDCPA does not mandate an explicit statute-of-limitations disclosure, and the parties do not point to any Ninth Circuit authority to that effect. Also, the Third Circuit recently clarified that although the least-sophisticated debtor might find a particular dunning letter misleading, the court was still disinclined to "impose any specific mandates on the language debt collectors must use, such as requiring them to explicitly disclose that the statute of limitations has run." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422 (3d Cir. 2018) (vacating district court's order granting debt collector's motion to dismiss); *cf. Buchanan v. Northland Grp., Inc.,* 776 F.3d 393, 400 (6th Cir. 2015) (Kethledge, J., dissenting) (observing that all parties agreed that the collector "would have been within its lawful rights" if it simply sent a letter to the debtor that "recited the amount of [the debtor's] longstanding unpaid debt and demanded payment in full").

On the other hand, the Seventh Circuit held that a dunning letter violated the FDCPA for two reasons, one of which was that the "the letter did not make clear to the

recipient that the law prohibits the collector from suing to collect this old debt." *Pantoja*, 852 F.3d at 684. The Federal Trade Commission (FTC) has also recommended an explicit statute-of-limitations disclosure. *See Fed. Trade Comm'n, The Structure and Practice of the Debt Buying Industry*, 47 (2013) (FTC Report 2013) (cited in *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1015 (7th Cir. 2014)). And the Consumer Financial Protection Bureau (CFPB), which has authority to "prescribe rules with respect to collection of debts by debt collectors," 15 U.S.C. § 1692l(d), has for some time now been considering a rule that would require debt collectors to provide a time-barred debt disclosure when they attempt to collect time-barred debt. *See Small Business Review Panel for Debt Collector and Debt Buyer Rulemaking, Outline of Proposals Under Consideration and Alternatives Considered*, dated July 28, 2016, at 19-20 (available at http://files.consumerfinance.gov/f/documents/20160727_cfpb_Outline_of_proposals.pdf (last visited Sept. 26, 2018).

As of this writing, however, the CFPB has not promulgated any rules. That agency is apparently still considering such a rule,[3] and in the meantime, both the FTC and the CFPB have secured consent decrees with certain debt collectors – including Midland, in the case of the CFPB – obligating them to include the exact statute-of-limitations disclosure language Midland has used here when seeking to collect on time-barred debts.

---

[3] *See Consumer Financial Protection Bureau, Spring 2017 Rulemaking Agenda*, https://www.consumerfinance.gov/about-us/blog/spring-2017-rulemaking-agenda/ (last visited Sept. 26, 2018); *Consumer Financial Protection Bureau, Spring 2018 Rulemaking Agenda*, https://www.consumerfinance.gov/about-us/blog/spring-2018-rulemaking-agenda/ (last visited Sept. 26, 2018). The Court takes judicial notice of these documents. *See Corrie v. Caterpillar*, 503 F.3d 974, 978 n.2 (9th Cir. 2007).

*See In re Encore Capital Group, Inc.*, 2015-CFPB-0022 (CFPB Admin. Proceeding Consent Order Sept. 3, 2015) (CFPB consent decree binding upon Midland); *United States v. Asset Acceptance, LLC*, No. 8:12–cv–182–T–27EAJ (M.D. Fla. 2012) (FTC consent decree entered by the district court one day after the complaint was filed).

The consent decrees, however are the product of compromise between the parties and thus necessarily reflect a compromised position. The Court will not, therefore, accord *Chevron* deference to these decrees. *Accord, e.g., Pierre v. Midland Credit Mgmt., Inc.*, No. 16-C-2895, 2018 WL 723278 at *6 (N.D. Ill. Feb. 5, 2018) (declining to afford *Chevron* deference to the decrees, and citing various cases similarly declining to do so); *White v. First Step Group LLC*, No. 2:16-cv-02439-KJM-GGH, 2017 WL 4181121, at *4 (E.D. Cal. Sept. 19, 2017) (same).

Ultimately, then, the Court will start its analysis, not by asking if Midland has complied with the consent decree (it has), but by asking the broader question of whether the dunning letter, read in its entirety, is false, deceptive, or misleading, or is an unfair or unconscionable means of seeking to collect on a debt. From there, the more specific question becomes whether the letter misleadingly states or implies that Midland could enforce Stimpson's time-barred debt in court. If so, then Midland has violated the FDCPA by misrepresenting the "legal status" of Stimpson's debt. *See* 15 U.S.C. § 1692e(2)(A).

### (b) Midland's Statute-of-Limitations Disclaimer Is Not Confusing or Misleading

Both parties point to the disclaimer language in their effort to convince the Court

that the letter either is, or is not, misleading.  Midland says it complied with the CFPB

consent decree and, therefore, its letter cannot be deemed misleading or deceptive under

the FDCPA.  Stimpson, on the other hand, says the disclaimer is confusing because it

says only that Midland *will not* sue when it should have said Midland *cannot* sue.

      The parties have identified two lines of authority that, although not binding, help

guide the Court's decision: (1) a line of circuit authority dealing with debt collectors'

offers to "settle" time-barred debts; and (2) a series of district court cases

      Starting with the circuit authority, the Third, Fifth, Sixth, and Seventh Circuits

have held that debt collectors who falsely or misleadingly imply that a time-barred debt

remains legally enforceable have violated the FDCPA.  *See Tatis v. Allied Interstate,*

*LLC*, 882 F.3d 422 (3d Cir. 2018); *Pantoja v. Portfolio Recovery Assocs., LLC*, 852 F.3d

679 (7th Cir. 2017); *Daugherty v. Convergent Outsourcing, Inc*., 836 F.3d 507 (5th Cir.

2016); *Buchanan v. Northland Grp., Inc.,* 776 F.3d 393, 395 (6th Cir. 2015); *McMahon*

*v. LVNV Funding, LLC*, 744 F.3d 1010 (7th Cir. 2014).  As one court explained, "When a

dunning letter creates confusion about a creditor's right to sue, that is illegal." *Buchanan*,

776 F.3d at 399.  These cases are distinguishable, however, because none of the dunning

letters included the same disclaimer language Midland used here.  In fact, in four of the

five cases – *Buchanan, Daugherty*, *McMahon*, and *Tatis* – the letters did not contain any

disclaimer at all.  Further, in *Buchanan*, the Sixth Circuit suggested, in dicta, that if the

debt collector had included the language Midland used here, that would have corrected

"any possible misimpression by unsophisticated consumers." *Buchanan*, 776 F.3d at

400.

The Seventh Circuit made the same suggestion in *Pantoja v. Portfolio Recovery Assocs., LLC*, 852 F.3d 679, 683 (7th Cir. 2017). That was the one case (out of the five) where the collector included a disclaimer about the age of the debt. But the disclaimer did not use the same language Midland uses: rather, it included only the second sentence – the one that says, "Because of the age of your debt, we will not sue you for it and we will not report it to any credit reporting agency." *Id.* at 682. The *Pantoja* letter omitted the first sentence – the one that says the law limits how long a debtor could be sued on a debt. *Id.* at 682, 686. The court held that by omitting this first sentence, "the letter deceptively said that [the debt collector] had chosen not to sue Pantoja, rather than saying that the debt was so old that [the debt collector] could not sue him for the alleged debt." *Id.* at 683.

This line of circuit authority is further distinguishable because the dunning letters in those cases included an explicit "settlement" offer, and the courts thus were called upon to decide whether the word "settle," used in the context of particular debt collection letters, generated confusion. All four circuits addressing this question concluded that "[b]ecause the words 'settlement' and 'settlement offer' could connote litigation, the least-sophisticated debtor could be misled into thinking . . . [the debt collector] could legally enforce the debt."[4] *Tatis,* 882 F.3d at 425; *see also Daugherty*, 836 F.3d at 513;

---

[4] This line of reasoning has been sharply criticized by one judge, *see Buchanan*, 776 F.3d at 400-01 (Kethledge, J., dissenting), but the Court need not weigh in on this precise question because Midland's letter to Stimpson does not explicitly present itself as a "settlement offer," and the word "settle" does not otherwise appear in the letter.

*Buchanan*, 776 F.3d at 396; *McMahon*, 744 F.3d at 1013-14. *But see, e.g., Johns v. Northland Group, Inc.*, 76 F. Supp. 3d 590, 599-600 (E.D. Pa. 2014) (rejecting an argument that the term "settlement offer" misrepresented the legal status of a time-barred debt or implied that litigation was imminent) (citing *Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 299 (3d Cir. 2008)).

Midland's letter does not explicitly present itself as a "settlement" offer, however, so the circuit authority is useful only to the extent it highlights the larger point: dunning letters on time-barred debts, when read in their entirety, cannot generate confusion about the collector's right to sue on the debt. More to the point, "in keeping with the text and purpose of the FDCPA, . . . any such letters, when read in their entirety, must not deceive or mislead the least-sophisticated debtor into believing that she has a legal obligation to pay the time-barred debt." *Tatis*, 882 F.3d at 430.

As for the district court decisions, at least two district courts have concluded that nearly identical dunning letters did not violate the FDCPA in cases where, as here, a partial payment would not restart the statute of limitations. *See Genova*, 193 F. Supp. 3d at 368 (court concluded that there was no revival risk); *Trichell*, 2018 WL 4184570 (plaintiff did not argue that there was a revival risk). A third court found the disclaimer language sufficient even where there was a revival risk. *See Boedicker* 227 F. Supp. 3d at 1240-41. Another court has gone further still, concluding not only that the disclaimer used here is sufficient, but also that the FDCPA does not obligate debt collectors to advise consumers of potential defenses, "including the expired limitation or the

consequence of partial repayment." *Olsen v. Calvary Portfolio Servs., LLC*, 2016 WL 4248009, at *2 (M.D. Fla. Aug. 11, 2016).

Stimpson points to several contrary district court decisions, including *Pierre v. Midland Credit Management, Inc.*, No. 16-C-2895, 2018 WL 723278, (N.D. Ill. Feb. 5, 2018), *Baye v. Midland Credit Management, Inc.*, No. 17-4789, 2017 WL 4918998, (E.D. La. Oct. 31, 2017), and *Smothers v. Midland Credit Management, Inc.*, No. 16-2202-CM, 2016 WL 7485686 (D. Kan. 2016)). *See Response,* Dkt. 26, at 9. But in those cases, there was a risk that a partial payment could revive the stale debt, and that risk factored into the decisions. For example, in *Smothers v. Midland Credit Management, Inc.*, the court explained that "[t]he least sophisticated consumer most certainly would not be aware that making a payment could make the debt judicially enforceable again – particularly when the collector tells the consumer that the law limits how long she can be sued and that the debt collector will not sue." 2016 WL, at *5; *see also Pierre* 2018 WL 723278.

As already noted, there is no revival risk here, and, to the extent these courts concluded that the dunning letters were misleading solely because they failed to include a more explicit statute-of-limitations disclosure, *see Baye*, 2017 WL 4918998, the Court is not persuaded. Read from the perspective of the least sophisticated consumer, Midland's letter does not falsely state or indirectly suggest that it has the ability to sue on the time-barred debt. Rather, the letter expressly informs Stimpson that (1) the law limits how long a person can be sued on a debt, and (2) due to the age of his debt, Midland would not sue him. Contrary to Stimpson's assertions, the Court is not convinced that the least

sophisticated consumer would interpret this language as a veiled message, telling him that the debt is *not* time barred, or that litigation may be forthcoming, if Midland so chooses. *Accord Trichell*, 2018 WL 4184570, at *3 (observing that the first sentence in the disclaimer "draws a connection between the legal unenforceability of the debt and the debt collector's promise not to sue."). The Court will therefore grant summary judgment in defendants' favor.

### 4. Midland Is Not Collaterally Estopped From Arguing It Has Complied with the FDCPA

The Court is not persuaded that Midland is collaterally estopped from contending that its letter does not violate the FDCPA. Plaintiff contends that the District of Kansas' 2016 decision in *Smothers v. Midland Credit Management, Inc.* 2016 WL 7485686 (D. Kan. 2016) prevents Midland from defending its letter before this Court.

Trial courts have broad discretion to determine when collateral estoppel should be applied. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979). *Parklane* stated a "general rule" that the trial court should prohibit offensive collateral estoppel if its application would be unfair. *Id.* at 330-31. Offensive collateral estoppel can be determined to be unfair if there is the existence of prior inconsistent judgments. *Id.* Stimpson has cited to a number of different cases to support his collateral estoppel argument. Dkt. 26 at 6-7. In *Pierre*, *Baye*, and *Smothers*, the court found defendants' letter to be misleading for not including a revival disclosure. *Pierre*, 2018 WL 723278, at *4; *Baye*, 2017 WL 4918998, at *1; *Smothers*, 2016 WL 7485686 at *1.

Here, applying offensive collateral estoppel would not be appropriate. None of the cases Stimpson cites are binding on this Court and none deal with the choice-of-law issue unique to this case. Additionally, the *Smothers* decision Stimpson cites came from the same court that issued *Boedicker*, a plainly contradictory ruling. *Boedicker*, 227 F. Supp. 3d at 1241-42 (granting summary judgment in favor of Midland Credit because the letter was not a "settlement offer" and the relevant administrative agencies approved communications that matched Midland's letter); *Smothers,* 2016 WL 7485686, at *5 (granting summary judgment in favor of plaintiff because the letter violated the FDCPA by "offering partial payment options on a time-barred debt without also disclosing that making a partial payment would revive the debt as judicially enforceable under Kansas law").

Defendants are not collaterally estopped from litigating this issue against Stimpson because his claim can be distinguished because of the unique choice of law issue in this case. Additionally, the plainly contradictory rulings over the revival disclosure suggest that the application of offensive collateral estoppel would be unfair in this case.

## IV
## PLAINTIFF'S MOTION TO AMEND

The Court will next resolve plaintiff's motion to amend. Plaintiff filed this motion on July 18, 2018 – a month after the Court heard argument on defendants' summary judgment motion and more than five months after the Court-imposed, February 1, 2018 deadline to file such a motion. *See Dec. 1, 2017 Case Management Order*, Dkt. 13, ¶ 2. Plaintiff asks the Court to allow him to add an additional plaintiff, Nick Holt. Mr. Holt

would allege the same FDCPA claim the current plaintiff alleges, but counsel represents that Mr. Holt's claim is "not subject to Nevada law that Defendants contend apply to Mr. Stimpson." *Motion*, Dkt. 36, at 2. Defendants oppose the motion.

## A. The Legal Standard

Motions to amend a pleading after the scheduling order deadline has expired are governed not by the liberal provisions of Rule 15(a) of the Federal Rules of Civil Procedure but by the more restrictive provisions of Rule 16(b), which requires a showing of "good cause." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604 (9th Cir. 1992). The focus of Rule 16(b)'s good cause standard is the diligence of the moving party. *Id.* at 608. A court should find good cause only if the moving party shows it "could not reasonably meet the established timeline in a scheduling order despite [its] diligence." *DIRECTV, Inc. v. Busdon*, No. CV-04-265-S-LMB, 2005 WL 1364571, *1 (D. Idaho June 8, 2005). "Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Johnson*, 975 F.2d at 609 (*citing Engleson v. Burlington Northern R.R. Co.*, 972 F.2d 1038, 1043 (9th Cir. 1992)).

When determining whether to grant a motion to amend outside the deadline imposed in the scheduling order, a court may also consider "the existence or degree of prejudice to the party opposing the modification" *Id*. But, while a court is allowed to consider any prejudice that may occur, the court should focus its inquiry "upon the moving party's reasons for seeking modification." *Id.* If the party moving to amend "was not diligent, the inquiry should end." *Id.*

**B.      Analysis**

Plaintiff has not demonstrated diligence, nor has he made a meaningful effort to do so.  (His motion recites the more liberal standards of Rule 15(a), which do not apply here).  Plaintiff does point out that during oral argument on the motion for summary judgment, the Court commented that if it determined Nevada law governed Stimpson's account, it likely would *not* opine as to what the outcome would have been if Mr. Stimpson's account had been governed by Idaho law.  The Court noted that it was somewhat troubled by the inefficiency of not tackling that issue, given that in the future it seemed likely that plaintiff's counsel would be back before the Court with a different plaintiff whose credit card agreement was governed by Idaho law.  Regardless, though, the Court explained that, despite the inefficiency, there were good reasons to restrict itself to the more precise issues presented by Stimpson's dealings with Midland.  The Court also advised the parties to inform Court staff if they both agreed that they would prefer that the Court decide that issue.  *See Hearing Tr.*, Dkt. 34, at 37-38.  The parties did not reach an agreement on that score and, for that reason, Mr. Stimpson filed a motion to amend the complaint.  *See Reply*, Dkt. 38, at 2.

The Court will deny the motion, as plaintiff has not established diligence, which ends the good-cause inquiry.  *See Johnson*, 975 F.2d at 609.  The Court also observes that that it appears that there are disputes regarding whether Idaho law governs Mr. Holt's credit agreement as well.  Defense counsel says Holt's claim would be governed by Virginia law and that a partial payment would not restart the statute of limitations.  The parties disagree on this issue, but the larger point is that it appears discovery would be

necessary to determine if Idaho law does, in fact, govern, Mr. Holt's agreement. The discovery deadlines have long since passed, which further supports the Court's decision to deny the motion to amend.

## V
## MOTION FOR CLASS CERTIFICATION

Finally, the Court will address the plaintiff's motion for class certification. This motion is not fully briefed, as the parties agreed that it made more sense to first decide defendant's motion for summary judgment, and to then address class certification. *See* Dkt. 21 (Feb. 28, 2018 order staying briefing on the class certification motion). Given the Court's ruling in defendants' favor, the motion for class certification will be deemed moot.

## ORDER

**IT IS ORDERED that:**

1.  Defendants' Motion for Summary Judgment (Dkt. 22) is **GRANTED**.

2.  Plaintiff's Motion for Leave to Amend (Dkt. 36) is **DENIED.**

3.  Plaintiff's Motion for Class Certification (Dkt. 18) is **DEEMED MOOT.**

DATED: September 27, 2018

_____
B. Lynn Winmill
Chief U.S. District Court Judge